UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LANTOR, INC., Plaintiff, | : | |
| v. | : | CA 06-46 S |
| NICASSIO CORPORATION d/b/a NICASSIO GROUP, Defendant. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court are two motions for entry of judgment by default pursuant to Fed. R. Civ. P. 55(b)(1)[1] filed by Plaintiff Lantor, Inc. ("Plaintiff" or "Lantor"). The first motion is entitled Motion for Entry of Judgment by Default (Document ("Doc.") #12) ("First Motion for Default Judgment").[2] The second motion is entitled Application to Court for Entry of Judgment by Default (Doc. #18) ("Second Motion for Default Judgment"). The Court refers collectively to the two motions as the "Motions."

---

[1] Fed. R. Civ. P. 55(b) provides in relevant part:

> (b) Judgment. Judgment by default may be entered as follows:
>
> (1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

Fed. R. Civ. P. 55(b).

[2] In designating this Motion for Entry of Judgment by Default (Doc. #12) as the "First Motion for Default Judgment," the Court ignores a previous application for default judgment which was terminated on April 24, 2006. See Docket; see also Application to Court for Entry of Judgment by Default (Document ("Doc.") #6).

The Motions have been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and DRI LR Cv 72(a). The Court conducted a hearing on the First Motion on May 25, 2006. As the Second Motion seeks essentially the same relief as the First Motion, no additional hearing is necessary. For the reasons stated below, I recommend that the Motions be granted.

**I. Facts[3] and Travel**

This is an action for breach of contract and unjust enrichment. See Complaint (Doc. #1) ¶¶ 11-18. Lantor is a Delaware corporation with a principal place of business in Massachusetts. See id. ¶ 1. Novapipe™ is a division of Lantor with a principal place of business in North Smithfield, Rhode Island. See id. Among other products, Novapipe™ manufactures cured in place pipe ("CIPP") liners. See id. ¶ 5. Defendant Nicassio Corporation d/b/a Nacassio Group ("Nicassio" or "Defendant") is a Pennsylvania corporation with a principal place of business in Pennsylvania. See id. ¶ 2.

Lantor, through its Novapipe™ division, entered into a contract with Nicassio pursuant to which Novapipe™ would provide materials to Nicassio and Nicassio would pay for those materials. See id. ¶ 12. From April 20, 2005, through June 13, 2005, Nicassio ordered materials from Novapipe™, see id. ¶ 7, and

---

[3] Because default has entered against Defendant Nicassio Corporation d/b/a Nacassio Group ("Nicassio" or "Defendant"), see Entry of Default (Doc. #11), the factual allegations of the Complaint are taken as true, see Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002)("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.") (internal quotation marks and citation omitted); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985)("[T]here is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its ... claims must be considered established as a matter of law.").

Novapipe™ shipped the materials to Nicassio's CIPP plant in Sanford, Florida, as requested by Nicassio, see id. ¶¶ 8-9. The terms of payment for the materials were "net 60 days." Id. Nicassio failed to pay for the materials and also retained possession of them. See Complaint ¶ 17.

Lantor filed the instant action on January 31, 2006, alleging that Nicassio had breached its payment obligation under the contract and that Lantor had been damaged in an amount which was at least $239,160. See Docket; see also Complaint ¶¶ 14-15. On March 10, 2006, Lantor filed the summons, showing that Nicassio had been personally served on February 14, 2006, at 1380 Old Freeport Road, Suite 3B, Pittsburgh, Pennsylvania 15238. See Summons (Doc. #2).

Nicassio failed to answer the Complaint. See Docket. Lantor moved for entry of default on March 13, 2006, see Application to Clerk for Entry of Default and Affidavit in Support Thereof (Doc. #3) ("First Application for Default"), and the Clerk entered default on the same date, see Docket (Doc. #5). Thereafter, Lantor filed an application for entry of default judgment, see Application to Court for Entry of Judgment by Default (Doc. #6), with a supporting affidavit, see Affidavit as to Competency, Military Service and in Proof of Claim (Doc. #7). However, the Court subsequently noticed that the First Application for Default lacked the certification required by DRI LR Cv 55(a). See Order Vacating Default (Doc. #8). Accordingly, the Court vacated the default which had been entered by the Clerk on March 13, 2006. See id.

On April 14, 2006, Lantor again moved for entry of default. See Motion to Clerk for Entry of Default and Affidavit in Support Thereof (Doc. #9) ("Second Application for Default"). The Second Application for Default included a certification that a copy of the application had been sent to Nicassio by both first class and

certified mail, return receipt requested.[4] See Second Application for Default at 2. The Second Application for Default was also supported by an affidavit from Lantor's counsel, attesting that Nicassio was served with the Complaint on February 14, 2006, that more than twenty days had elapsed since service of the Complaint, and that Nicassio had failed to plead or otherwise defend. See Affidavit (Doc. #10). In another affidavit Lantor's counsel again attested that to the best of his knowledge Defendant was not in the military service, was not an incompetent, and was not an infant. See id. at 2 (Affidavit as to Competency, Military Service and Proof of Claim). Following the filing of these documents, the Clerk entered default against Nicassio on April 17, 2006. See Entry of Default (Doc. #11).

Lantor filed the First Motion for Default Judgment on April 28, 2006. See Docket. Attached to it was a copy of the summons, reflecting that Nicassio had been duly served on February 14, 2006, see First Motion for Default Judgment, Attachment ("Att.") 2 (copy of summons) and another affidavit from Lantor's counsel attesting that Nicassio was not in the military service and not an infant or an incompetent, see id., Att. 3 (Affidavit as to Competency, Military Service and in Proof of Claim).

The Court conducted a hearing on the First Motion for Default Judgment on May 25, 2006. See Docket. At that time, the Court advised counsel for Lantor that the record did not contain sufficient information to enable the Court to complete the required analysis regarding personal jurisdiction relative to the First Motion for Default Judgment. See Order for Supplementation (Doc. #13) at 1. In an order issued that same date, the Court identified the matters about which additional information was

---

[4] The signed return receipts, evidencing receipt of the Second Application for Default (Doc. #9) by Nicassio, are attached to the First Motion for Default Judgment (Doc. #12) at 3.

required and directed that Lantor supplement the record by filing an affidavit and memorandum by June 19, 2006. See Order for Supplementation at 1.

Counsel subsequently requested an extension of time within which to file the memorandum and affidavit, see Letter from Comley to Martin, M.J., of 6/15/06, and the Court extended the time for filing those documents to July 10, 2006, see Order Extending Time for Supplementation (Doc. #14). On July 7, 2006, Lantor moved for a further extension of time, see Motion for Second Extension of Time for Supplementation (Doc. #15), and the Court also granted this request and extended the time to July 24, 2006, see Order of 7/10/06 (Doc. #16). Lantor filed the requested memorandum on July 21, 2006, see Plaintiff's Memorandum of Law in Support of Rhode Island's Exercise of Jurisdiction over Nicassio (Doc. #17) on July 21, 2006, and it filed the affidavit on July 24, 2006, see Affidavit of Joseph S. Roth (Doc. #19) ("First Roth Aff."). The following day, July 25, 2006, Lantor filed the Second Motion for Default Judgment, and the Court took the Motions under advisement.

Thereafter, in the process of writing this Report and Recommendation, the Court concluded that the record needed to be further supplemented regarding: 1) service of process on Defendant; 2) computation of the amount of the judgment; and 3) identification of costs. See Order for Supplementation (Doc. #20) ("Order of 10/27/06"). On October 27, 2006, the Court issued an order, directing Lantor to supplement the record with evidence that Nicassio had been served with process in accordance with Fed. R. Civ. P. 4(h)(1), R.I. Super. Ct. R. 4(f), or Pa. R. Civ. P. 424. See id. at 4. Lantor was additionally directed to supplement the record with an affidavit or other evidence explaining the basis of its request for: a) judgment in the amount of $239,160.00; b) accrual of prejudgment interest from

June 14, 2005, at a rate of either 10%, see First Motion for Default Judgment, or 13.33%, see Second Motion for Default Judgment; and c) costs in the amount of $289.96. See Order of 10/27/06 at 6-7. The order specified that the requested supplementation was to be accomplished by December 1, 2006. See Order of 10/27/06 at 7.

Lantor sought an extension of time until December 14, 2006, to comply with the Order of 10/27/06. See Motion for Extension of Time (Doc. #21). The Court granted the extension on November 29, 2006. See Order of 11/29/06 (Doc. #22). On December 15, 2006, Lantor filed Plaintiff's Memorandum of Law Concerning Service of Process and Amount of Judgment (Doc. #23) ("Plaintiff's Supp. Mem.") with two affidavits. Lantor filed a motion for leave to file an additional affidavit on December 21, 2006, see Plaintiff's Motion to File Additional Supplemental Affidavit in Response to the Court's Order for Further Supplementation Dated October 27, 2006 (Doc. #24), and the Court granted this request on December 22, 2006, see Order of 12/22/06. Thereafter, the Court was able to conclude writing the instant Report and Recommendation.

**II. Jurisdiction**

As an initial matter, when judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to assure itself that it has jurisdiction over both the subject matter and the parties. See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy, 242 F.3d 322, 324 (5th Cir. 2001); In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999); Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir. 1997); Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986); see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)("To hear a case, a court must have personal juris-

diction over the parties, 'that is, the power to require the parties to obey its decision.'")(quoting United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 35 (1st Cir. 1999)); Letelier v. Republic of Chile, 488 F.Supp. 665, 668 (D.D.C. 1980)(holding that issue of subject matter jurisdiction should be fully explored despite previous entry of default); cf. Hugel v. McNell, 886 F.2d 1, 3 n.3 (1st Cir. 1989)("[W]here the court rendering the default judgment is shown to lack personal jurisdiction over the defendant, ... the judgment may be vacated and set aside by the rendering court on motion, or by another court on collateral attack.")(quoting 6 Moore's Federal Practice para. 55.09)(second alteration in original). Accordingly, this court examines the existence of both subject matter and personal jurisdiction in this action.

**A. Subject Matter Jurisdiction**

The Complaint avers that "[t]his Court has subject matter jurisdiction over Lantor's claims pursuant to 28 U.S.C. § 1332(a)(1),[5] as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest [and] costs." Complaint ¶ 3. Because default has entered against Nicassio, the factual allegations of the Complaint are taken as true. See Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13, (1st Cir. 1985). In addition, this Court's own review of the filings in this matter has uncovered no

---

[5] 28 U.S.C. § 1332(a) provides in relevant part that:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
>
> (1) citizens of different States;

28 U.S.C. § 1332(a)(1).

reason to question the existence of subject matter jurisdiction. Accordingly, I find that subject matter jurisdiction exists.

**B. Personal Jurisdiction**

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (internal quotation marks omitted). "A district court may exercise authority over a defendant by virtue of either general or specific [personal] jurisdiction." Id. (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n., 142 F.3d 26, 34 (1st Cir. 1998))(alteration in original).

**1. General Jurisdiction**

"General jurisdiction exists when the defendant has engaged in 'continuous and systematic activity' in the forum, even if the activity is unrelated to the suit." Id. (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir.1992)). The general jurisdiction standard is considerably more stringent than the standard for specific jurisdiction. See Barry v. Mortgage Servicing Acquisition Corp., 909 F.Supp. 65, 74 (D.R.I. 1995). "The continuous and systematic requirement has been characterized as being satisfied when the defendant's forum contacts are extensive and pervasive." Id. at 75 (citation and internal quotation marks omitted). The Court is not persuaded that Nicassio's contacts with Rhode Island, which are discussed in the specific jurisdiction section that follows, can fairly be characterized as "continuous and systematic," United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1088, or "extensive and pervasive," Barry v. Mortgage Servicing Acquisition Corp., 909 F.Supp. at 75. Accordingly, I find that general jurisdiction is not present.

**2. Specific Jurisdiction**

Specific jurisdiction applies where "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1088-89. For a court properly to exercise specific personal jurisdiction over the defendant, the requirements of both the state's long-arm statute and the United States Constitution must be satisfied. See Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001); Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). The Rhode Island long-arm statute, as interpreted by the Supreme Court of Rhode Island, is coextensive with federal due process mandates. See Levinger v. Matthew Stuart & Co., Inc., 676 F.Supp. 437, 439 (D.R.I. 1988)(citing Conn v. ITT Aetna Fin. Co., 252 A.2d 184, 186 (R.I. 1969)); see also Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F.Supp.2d 31, 34-35 (D.R.I. 2003); Microfibres, Inc. v. McDevitt-Askew, 20 F.Supp.2d 316, 320 (D.R.I. 1998). Therefore, Fourteenth Amendment due process requirements determine the exercise of personal jurisdiction in the District of Rhode Island. See Levinger, 676 F.Supp. at 439; Northeastern Land Servs., Ltd. v. Schulke, 988 F.Supp. 54, 57 (D.R.I. 1997); see also Hainey v. World AM Communications, Inc., 263 F.Supp.2d 338, 341 (D.R.I. 2003).

"Due process demands minimum contacts between a nonresident defendant and the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Northeastern Land Servs., Ltd., 988 F.Supp. at 57 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). "[F]or purposes of specific jurisdiction, contacts should be judged when the cause of action arose, regardless of a later lessening or withdrawal." Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 259 F.3d 59, 66 (1st Cir. 2002).

The First Circuit applies a three-part analysis in evaluating minimum contacts. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999); Sawtelle v. Farrell, 70 F.3d 1381, 1388-89 (1st Cir. 1995).

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Sawtelle, 70 F.3d at 1389 (quoting United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1089). The Gestalt factors are: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184-85, 85 L.Ed.2d 528 (1985)).

**a. Relatedness**

The first of the three requirements for specific jurisdiction centers "on the causal nexus between [the defendant's] forum-based contacts and the harm underlying [the plaintiff's] complaint." Northeastern Land Servs., Ltd. v. Schulke, 988 F.Supp. 54, 57-58 (D.R.I. 1997); see also Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994)(same). Here the harm alleged is that Nicassio breached its contract with Lantor, see Complaint ¶¶ 11-15, and that Nicassio has been unjustly enriched by retaining the materials Lantor sold

to it and not paying for them, see Complaint ¶¶ 16-18. For each claim, Lantor must show a sufficient "causal nexus" between Nicassio's contacts with Rhode Island and Lantor's causes of action. See Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7 (1st Cir. 2002)(stating that for its tort claims plaintiff must show a sufficient "causal nexus" between non-resident defendant's contacts with forum state and plaintiff's tort claims); id. at 10 (stating same requirement for plaintiff's breach of contract claim).

"[T]he mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 290 (1st Cir. 1999)(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985)).

> [A] contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors--**prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing--that must be evaluated** in determining whether the defendant purposefully established minimum contacts within the forum.

Burger King Corp., 471 U.S. at 479, 105 S.Ct. at 2185 (internal citations and quotation marks omitted)(bold added); see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The First Circuit has instructed that "[i]n contract cases, a court charged with determining the existence *vel non* of personal jurisdiction must look to the elements of the cause of action and ask whether the defendant's contacts with the forum

were instrumental either in the formation of the contract or in its breach." Phillips Exeter Acad., 196 F.3d at 289.

Based on the evidence submitted by Lantor, I find that Nicassio's contacts with Rhode Island were instrumental in the formation of the contract at issue here. According to Joseph S. Roth, Lantor's Chief Financial Officer, since 2002 Nicassio has placed orders for materials from Novapipe™ in the amount of $819,695. See First Roth Aff. ¶ 5. When placing these orders, Nicassio communicated with Novapipe™ in Rhode Island. See id. The communications included purchase orders, order specifications, telephone calls, correspondence, and payments for orders. See First Roth Aff. ¶ 5. Examples of written communications from Nicassio are attached as Exhibit A to the First Roth Aff. See id., Exhibit ("Ex.") A. They include: 1) a February 14, 2003, letter of transmittal from Thomas G. Walker of Nicassio to John Williamson ("Mr. Williamson") of Novapipe™, 2) a March 6, 2003, fax cover sheet from Lou Nicassio to Mr. Williamson, and 3) a April 13, 2005, fax from Nicassio to Novapipe™. See id. In response to the communications from Nicassio, Lantor in turn communicated with Nicassio from Rhode Island. See First Roth Aff. ¶ 5 ("For example, Novapipe™ would send invoices from Rhode Island.").

Mr. Roth further attests that:

> The claims in this action involve a series of seven different orders that Nicassio placed with Novapipe™ beginning on April 20, 2005, and ending on June 13, 2005, by which Nicassio ordered certain CIPP materials from Novapipe™. Nicassio placed all of these orders by sending purchase orders to Novapipe™ in Rhode Island. One of these purchase orders, dated June 8, 2005, is attached hereto as Exhibit B. With regard to these orders, Nicassio specifically requested that the materials be shipped F.O.B. North Smithfield, Rhode Island to Sanford, Florida. Novapipe™ shipped all materials as ordered, and Nicassio accepted delivery of all said materials. Novapipe™ then sent invoices from

> its offices in Rhode Island to Nicassio. A copy of one of those invoices is attached hereto as Exhibit C. Nicassio owes Novapipe™ $239,160.00 for the materials that it ordered from April 20 to June 13, 2005. Despite demand, Nicassio has refused to pay for these materials.

First Roth Aff. ¶ 7.

The Court finds that Nicassio had an established course of dealing with Novapipe™ for approximately three years prior to the dispute giving rise to the instant action. That course of dealing, involving numerous communications between Nicassio and Novapipe™, was instrumental in the formation of the contract at issue here. Thus, the "parties' prior negotiations and contemplated future consequences ... and the parties' actual course of dealing ...," Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d 42, 52 (1st Cir. 2002)(internal quotation marks omitted), also support a finding of relatedness.

In addition, there is a connection between Nicassio's Rhode Island contacts and the harm which is the basis for Lantor's Complaint. Nicassio ordered the materials by sending communications to Novapipe™ in Rhode Island, and then after receiving those materials, which were shipped from Rhode Island, Nicassio refused to pay for them.

Based on the foregoing facts, I find that the element of relatedness is satisfied.

**b. Purposeful Availment**

The second component of the three part test, purposeful availment, serves "to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995)(quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)

(explaining how defendant's contacts must qualify as "invoking the benefits and protections of [the forum state's] laws"). The goal is to identify in-state activity "that would make the exercise of jurisdiction fair, just, or reasonable." Rush v. Savchuk, 444 U.S. 320, 329, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980). The kind of purposeful availment necessary in the First Circuit requires in-state conduct by the defendant which is both voluntary and which makes it reasonably foreseeable that the defendant might be sued in the forum. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994)(describing foreseeability and voluntariness as "the two cornerstones of purposeful availment").

Furthermore, the voluntariness and foreseeability of the defendant's contacts depend on whether the defendant participated in the economic life of the forum and not just on the fact that the defendant formed a contract with the resident plaintiff. See Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 933 (1st Cir. 1985)(quoting Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1084 (1st Cir. 1973)); cf. McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)(holding it sufficient for purposes of due process that the defendant had participated in the economic life of the state and the contract had a substantial connection with the state).

This court has no difficulty finding that Nicassio participated in the economic life of Rhode Island. Since 2002 Nicassio has placed orders for materials from Novapipe™ in the amount of $819,695. See First Roth Aff. ¶ 5. As Lantor is seeking payment in the present action only for $239,160.00, it is a reasonable inference that Nicassio paid some $580,000 for materials ordered prior to the instant dispute. See December 4, 2006, Affidavit of Joseph S. Roth ("Second Roth Aff.") ¶ 4 (stating that "[o]n September 14, 2005, Nicassio made a payment

of $10,000"). Nicassio directed numerous oral and written communications into the state. See First Roth Aff. ¶ 5. By no means could these contacts with Rhode Island by Nicassio be considered merely random, isolated, or fortuitous.

**i. Voluntariness**

It appears that Nicassio voluntarily entered into the relationship with Novapipe™. This circumstance will not by itself satisfy the purposeful availment prong. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 292 (1st Cir. 1999)("Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship--say by solicitation, see, e.g., Nowak [v. Tak How Investments, Ltd., 94 F.3d [708,] at 716-17 [1st Cir. 1996]--the mere fact that the defendant willingly entered into a tendered relationship does not carry the day."); Northeastern Land Servs., Ltd. v. Schulke, 988 F.Supp. 54, 58 (D.R.I. 1997). However, here Nicassio's long term relationship with Novapipe™, which extended over three years and ultimately resulted in the seven orders which are the subject of the instant action, is sufficient to satisfy the voluntariness requirement.

**ii. Foreseeability**

The foreseeability component of purposeful availment requires that defendants have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)(citing Shaffer v. Heitner, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977)(Stevens, J., concurring in judgment))(alteration in original). When a defendant intentionally directs activities at the forum state which relate to the alleged claims, there is such fair warning. See id. (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984),

and Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)). Here the activities which Nicassio intentionally directed toward Rhode Island, repeated purchase orders and related communications sent over a three year period to Novapipe™ in Rhode Island, gave Nicassio such fair warning. Thus, there is evidence of "a voluntary decision by the defendant to inject itself into the local economy as a market participant." Brian Jackson & Co. v. Eximias Pharm. Co., 248 F.Supp.2d 31, 35-36 (D.R.I. 2003). I find that it was foreseeable that Nicassio would be subject to the jurisdiction of Rhode Island if a dispute arose regarding the performance of the contracts which Nicassio had entered into with Novapipe™.

Stated somewhat differently, it was foreseeable that Nicassio, by voluntarily entering into a business relationship with Novapipe™ and making repeated purchases of materials from Novapipe™ over a three year period, could be haled into court in Rhode Island if Nicassio failed to pay for the goods which it ordered. Accordingly, I find that the element of purposeful availment is satisfied.

**c. Gestalt Factors**

The third prong of the personal jurisdiction analysis, the Gestalt factors, arises after the establishment of minimum contacts and centers on whether the exercise of jurisdiction is reasonable. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Reasonableness equates with "fair play and substantial justice." Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). As this Court has concluded that the elements of relatedness and purposeful availment have been satisfied, discussion of the Gestalt factors is mandatory. Cf. Sawtelle v. Farrell, 70 F.3d 1381, 1394 (1st Cir. 1995)("[A]

failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness ....”); United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1091 n.11 (1st Cir. 1992)(“The Gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled.”).

This third portion of the jurisdictional test is not inflexible and varies in accordance with the strength of the first two parts. That is, “the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.” Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994). On the other hand, “an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness.” Id.

**i. Defendant's Appearance Burden**

In terms of the burden of defending this suit in Rhode Island, “this factor is only meaningful where a party can demonstrate some kind of special or unusual burden.” Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Although Nicassio is located in Pennsylvania, I do not find that its burden of appearing is special or unusual. Therefore, this factor is not meaningful.[6]

**ii. Forum State's Interest**

Determining Rhode Island's interest requires that the Court “mull ‘the forum state's interest in adjudicating the dispute ....’” Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 151 (1st Cir. 1995)(quoting United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1088). “The purpose of the inquiry

[6] Given that Nicassio has failed to answer or otherwise defend in this action, consideration of this factor may be academic for practical purposes.

is not to *compare* the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest." Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 483 n.26, 105 S.Ct. 2174, 2188 n.26, 85 L.Ed.2d 528 (1985), for the proposition that two forums may simultaneously have legitimate interests in the dispute's resolution). Here Rhode Island has an interest in seeing that a forum is provided to Lantor, whose Novapipe™ division, located in Rhode Island, shipped materials to an out-of-state defendant which has failed to pay for those materials. Thus, Rhode Island has a clear interest in the resolution of this controversy.

**iii. Plaintiff's Interest in Relief**

"The third factor is plaintiff's interest in obtaining convenient and effective relief." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). To achieve this end, a court must generally "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Id. (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994)). Here Lantor has chosen to litigate this action in Rhode Island.

**iv. Judicial System's Interest**

The key to applying this factor is ensuring "the most effective resolution of the controversy." Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995). It appears that the contract was made in Rhode Island since Nicassio placed all of the orders by sending purchase orders to Novapipe™ in Rhode Island. See First Roth Aff. ¶ 7. Accordingly, I find that Rhode Island law governs the agreement and that Rhode Island provides the best forum for resolution of the dispute between Nicassio and Lantor.

**v. States' Common Interest**

There are only four states with any arguable interest in this controversy: Massachusetts, where Lantor is located; Rhode

Island, where Novapipe™ is located; Pennsylvania, where Nicassio is located; and Florida, the state to which the goods were shipped. Of the four, Rhode Island has the greatest connection with the dispute. The purchase orders were sent into Rhode Island, the materials were manufactured in Rhode Island, and payment presumably was to be made in Rhode Island. See First Roth Aff. ¶¶ 5-7. As a fundamental social policy, it is desirable that the court which is most concerned with a controversy should adjudicate the dispute. Here the contract at issue was made in Rhode Island when Novapipe™ agreed to sell the materials to Nicassio and to ship them to Florida. See Complaint ¶¶ 7-15. The breach of contract occurred when Nicassio failed to pay Novapipe™ in Rhode Island the agreed amount. See id. ¶¶ 10, 14-15. Thus, Rhode Island has the greatest interest in this matter.

**vi. Conclusion Re Gestalt Factors**

It is apparent that all the Gestalt factors favor the exercise of jurisdiction by this Court. Accordingly, I find that this Court's exercise of jurisdiction over Nicassio is reasonable.

**d. Conclusion Re Personal Jurisdiction**

The Court finds that all three prongs of the tripartite test for the exercise of specific personal jurisdiction, relatedness, purposeful availment, and reasonableness, are satisfied. See United States v. Swiss American Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001). Accordingly, the Court has personal jurisdiction over Nicassio.

**C. Service of Process**

"It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant." Maryland State Firemen's Ass'n v. Chaves, 166 F.R.D. 353, 354 (D. Md.

1996); see also Griffin v. Foti, No. Civ.A. 03-1274, 2003 WL 22836493, at *1 (E.D. La. Nov. 24, 2003)(holding that entry of default judgment against defendant who has never been served is not appropriate); Perafan-Homen v. Hasty, No. 00 Civ. 3883(RWS), 2000 WL 1425048, at *1-2 (S.D.N.Y. Sept. 26, 2000)(denying motion for default judgment because only proper defendant was never served); Fed. R. Civ. P. 55(a)(providing for entry of default where party "fail[s] to plead or otherwise defend as provided by these rules ..."); Fed. R. Civ. P. 12(a)(1)(A)(requiring defendant to serve answer "within 20 days *after being served with the summons and complaint* ...")(italics added). "Before a default can be entered, the court must have jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process." 10A Charles Alan Wright et al., Federal Practice and Procedure § 2682 (3d ed. 1998)(footnote omitted).

Fed. R. Civ. P. 4(h) governs service of process upon corporations. It provides, in relevant part, that service upon a corporation (from which a waiver of service has not been obtained and filed) shall be effected:

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant ....

Fed. R. Civ. P. 4(h)(1). Alternatively, service may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State ...." Fed. R. Civ. P. 4(e)(1) (to which Fed. R. Civ. P. 4(h)(1) refers).

Lantor states that Nicassio was served in Pennsylvania on

February 14, 2006, pursuant to Pennsylvania Rule of Civil Procedure 424(2). See Plaintiff's Supp. Mem. at 2. Pa. R. Civ. P. 424 provides in relevant part that:

> Service of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action:
>
> ....
>
> (2) **the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity**, or

Pa. R. Civ. P. 424 (bold added). In support of its contention that the service complied with the above quoted rule, Lantor has submitted affidavits from Megan E. Young and John Williamson. See Plaintiff's Supp. Mem., Att. 1 (Affidavit of Megan E. Young ("Young Aff.")); Plaintiff's Motion to File Additional Affidavit in Response to the Court's Order for Further Supplementation Dated October 27, 2006 (Doc. #24), Att. (Affidavit of John Williamson ("Williamson Aff.")). Ms. Young, a Pennsylvania private investigator, affirms, inter alia, that:

> 4. In February 2006, I first attempted to make service on Nicassio at the address of 2323 A Main Street in Pittsburgh, Pennsylvania. Upon arriving at that address, I found that the building was unoccupied and locked. I was told by neighbors that there had not been any operations in the building for a couple of months, at least since December 2005. In addition, there was a delivery notice on the front of the building indicating that a delivery to Nicassio had been unsuccessfully attempted in December, which was months earlier.
>
> 5. Through my research, I obtained a phone number for the corporation, namely 412-287-0328.
>
> 6. I made numerous attempts to contact the corporation at that number. When I called, I was connected to a directory of Nicassio employees that listed three people, namely, "Betty," "Christine," and Ed

> Kuenzig. Mr. Kuenzig was the only person identified with a last name.
>
> 7. After numerous phone calls, a man answered the phone and identified himself as Ed Kuenzig. I asked him the address for Nicassio, and he told me that it was 1380 Old Freeport Road, Suite 3B, Pittsburgh, Pennsylvania.
>
> 8. On February 14, 2006, I went to 1380 Old Freeport Road, Suite 3B, Pittsburgh, PA to serve the corporation. Upon entering the building, I went to Suite 3B. There was a nameplate on the door identifying it as Nicassio's Office.
>
> 9. Upon entering, I observed that the office was a small two room suite. There were two desks in a larger open [sic] adjacent to the main door. To the right was a smaller, private office with a door. A man emerged from the smaller office. I asked him his name, and he identified himself as Ed Kuenzig. I made service of process upon him, he accepted the materials, and I left the office.

Young Aff. ¶¶ 4-9. Ms. Young completed the return of service on the back of the Summons, attesting that she had personally served Nicassio on February 14, 2006, at 1380 Old Freeport Road, Suite 3B, Pittsburgh, PA 15238. See Summons (Doc. #2).

Ms. Young further affirms in her affidavit that:

> 12. I have since made additional attempts to contact Nicassio. It is no longer operating in the office located at 1380 Old Freeport Road, and I have been unable to otherwise locate the Company.
>
> 13. On information and belief, on December 13, 2006, my co-worker Kevin McKenna contacted Mr. Kuenzig by telephone, and asked him what his title was while he was employed by Nicassio. Mr. Kuenzig confirmed that he used to be employed by Nicassio, but refused to provide Mr. McKenna with the information regarding his title.

Young Aff. ¶¶ 12-13.

John Williamson, the Sales Manager for Novapipe™, affirms that:

> 4. During numerous business dealings between

> Novapipe™ and Nicassio, from early 2002 to the summer of 2005, I worked consistently with an individual named Ed Kuenzig. Mr Kuenzig had various titles while he was with Nicassio, including Estimator, Project Administrator, and, most recently, Project Engineer.
>
> 5. Mr. Kuenzig was the person in charge of all aspects of Nicassio's construction projects, including project designs, project use, pricing structures, project bids, permitting, and bonding. He was also involved in ordering materials from Novapipe™ for Nicassio projects. When I telephoned Nicassio's offices to speak to someone about Nicassio's business with Novapipe™, I was consistently put through to Mr. Kuenzig.
>
> 6. Mr. Kuenzig was a central employee of Nicassio's day to day operations and I do not believe that Nicassio could have performed its day to day operations without Mr. Kuenzig. In this regard, Lou Nicassio once instructed me during a meeting at Nicassio's office in Pittsburgh that Mr. Kuenzig also attended that I should make sure that Mr. Kuenzig had al[l] relevant information about a certain project that Nicassio was working on.
>
> 7. In my dealings with him, I always found Mr. Kuenzig to be a very responsible employee.

Williamson Aff. ¶¶ 4-7.

Based on the information contained in the affidavits of Ms. Young and Mr. Williamson and also in the return of service completed by Ms. Young, I find: 1) that on February 14, 2006, Nicassio had a regular place of business or activity at 1380 Old Freeport Road, Suite 3B, Pittsburgh, Pennsylvania; 2) that the person in charge of that place of business or activity on that date was Ed Kuenzig ("Mr. Kuenzig"); 3) that Ms. Young personally served Mr. Kuenzig on that date and at that location with the Summons and Complaint in this action; and 4) that this service complied with Pa. R. Civ. P. 424(2) and, therefore, also with Fed. R. Civ. P. 4(e)(1) and 4(h)(1).

The record also reflects that Nicassio had actual notice of this lawsuit as evidenced by its receipt by certified mail of

copies of the First Motion for Default Judgment. See First Motion for Default Judgment (Doc. #12), Att.; see also Plushner v. Mills, 429 A.2d 444, 446 (R.I. 1981)("In construing Rule 4(d)(1) of the Federal Rules of Civil Procedure, the courts have broadly interpreted its provisions where the defendant or defendants have received actual notice of the suit.")(quoting Adams v. Sch. Bd. of Wyoming Valley West Sch. Dist., 53 F.R.D. 267, 268 (1971); Nowell v. Nowell, 384 F.2d 961 (5th Cir. 1967)).

In sum, I find that this Court has jurisdiction over Nicassio in that it has been served with process in accordance with Pa. R. Civ. P. 424(2) and this service satisfies the requirements of requirements of Fed. R. Civ. P. 4(e)(1) and 4(h)(1). In addition, I find that Nicassio had actual notice of this lawsuit.

**III. Judgment**

As previously noted, for purposes of the instant motion, the default has established the truth of Lantor's allegations. See n.1. The Court, having both subject matter jurisdiction and personal jurisdiction over Nicassio and the allegations of the Complaint having been established, concludes that default judgment should enter in favor of Lantor and against Nicassio. I so recommend.

**IV. Amount of Judgment**

"Following the entry of default, a district court can enter a final judgment without requiring further proof of damages only in limited situations. For example, no evidentiary hearing is necessary if the claim is for a sum certain." KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003). "In the Rule 55 context, a claim is not a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." Id. Conversely, "if the damages sought by the party moving for a default judgment are for a sum certain, or an amount which can be

rendered certain by calculation, no evidentiary hearing is necessary." Id. (quoting Farm Family Mut. Ins. Co. v. Thorn Lumber Co., 501 S.E.2d 786, 790 (1998); see also HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.3d 908, 919 (1st Cir. 1988)("It is settled that, if arriving at the judgment amount involves nothing more than arithmetic--the making of computations which may be figured from the record--a default judgment can be entered without a hearing of any kind.").

Here both Motions seek judgment in the amount of $239,160.00 plus prejudgment interest. See Motions. In accordance with the Court's Order for Further Supplementation (Doc. #20), Lantor has supplemented the record with a second affidavit from Mr. Roth which explains the basis for the judgment amount. See Plaintiff's Supp. Mem., Att. 2 ("Second Roth Aff.") ¶¶ 3-4. Attached to Mr. Roth's second affidavit are copies of the seven invoices which have given rise to this action. See id., Ex. A (copies of seven invoices). They total $243,465.95. See id. The amount sought in judgment is less than the total of the invoices because Nicassio made a $10,000.00 payment to Lantor on September 14, 2005, and Lantor applied $5,694.05 of that payment to the balance due on invoices that predated the invoices at issue in this action. See Second Roth Aff. ¶ 4. The remaining $4,305.95 was applied by Lantor to the earliest of the invoices, invoice number 3054. See id. Thus, the amount owed by Nicassio to Lantor after application of this partial payment is $239,160.00 [$243,465.95 (total of the seven invoices) - $4,305.95 (partial payment on 9/14/05) = $239,160.00 (outstanding balance owed for the invoices)].

Accordingly, I find, based upon the information contained in the second affidavit of Mr. Roth, that the amount sought in judgment is for a sum certain and that, therefore, no damages hearing is necessary. See HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.3d 908, 919 (1st Cir. 1988). I

further find based on that same affidavit that the amount of the judgment which should be entered against Nicassio is $239,160.00.

## V. Prejudgment Interest

### A. Applicable Law

Because this case is before the Court under federal diversity jurisdiction pursuant to 28 U.S.C. § 1332, see Complaint ¶ 3, "state law must be applied in determining whether and how much pre-judgment interest should be awarded," Fratus v. Republic W. Ins. Co., 147 F.3d 25, 30 (1st Cir. 1998). Under Rhode Island law, "the appropriate rate for pre-judgment interest in a contract action is 12 percent," id. (citing R.I. Gen. Laws § 9-21-10); accord Buckley v. Brown Plastics Mach., LLC, 368 F.Supp.2d 167, 169 (D.R.I. 2005)(noting agreement of parties of twelve percent per annum based on language of § 9-21-10), unless a different rate has been incorporated into the contract, see Vulcan Auto. Equip., Ltd. v. Global Marine Engine & Parts, Inc., 240 F.Supp.2d 156, 160, 163 (D.R.I. 2003)(finding 18% prejudgment interest rate applicable because each invoice expressly stated that a 1.5 percent per month service charge would be applied to overdue accounts). Recognizing the foregoing authority, Lantor has modified its original request and now asks that the prejudgment interest be awarded at the statutory rate of twelve percent pursuant to Rhode Island law. See Plaintiff's Supp. Mem. at 3-4. The Court agrees that twelve percent is the applicable rate for prejudgment interest. Accordingly, I recommend that Lantor be awarded prejudgment interest at a rate of twelve percent per annum.

### B. Date of Accrual

With regard to prejudgment interest, each invoice states "TERMS NET 60" and has an "INVOICE DUE DATE," which is reasonably interpreted as the date by which payment is due. See Second Roth Aff., Ex. A. There are six different due dates for the seven

invoices. See Second Roth Aff., Ex. A. The earliest due date for payment is June 19, 2005, and the latest due date is August 12, 2006. See id. To simplify computation of prejudgment interest, Lantor requests "that the Court award it prejudgment interest from August 12, 2005, the date by which interest began to accrue on the full amount claimed by Plaintiff." Plaintiff's Supp. Mem. at 3. The Court finds that this request is permissible under the applicable law because Lantor is entitled to have the interest accrue as of the due date for each of the seven invoices, see Buckley v. Brown Plastics Mach., LLC, 368 F.Supp.2d 167, 171 (D.R.I. 2005)("The point from which pre-judgment interest accrues is the date from which Plaintiff's damages actually began, or put another way, from the point at which he was entitled to his money, and did not receive it ...."). Accordingly, I recommend that prejudgment interest accrue on the judgment amount as of August 12, 2005.

**VI. Costs**

The Second Motion for Default Judgment requests that the Court add costs of $289.96 to the amount of judgment. See Second Motion for Default Judgment. However, Lantor has not complied with the Court's Order of 10/27/06 which directed it "to supplement the record with an affidavit or other evidence itemizing the costs which it requests the Court to include in the judgment." See Order of 10/27/06 at 6-7. The only costs which the Court can identify based on the present record is the $250.00 filing fee (which the docket reflects that Lantor paid). Accordingly, I recommend that costs in the amount of $250.00 be added to the judgment amount. To the extent that the Motions seek the addition of costs greater than $250.00, I recommend the Motions be denied because Lantor failed to comply with the Court's Order of 10/27/06 to itemize the costs which it is seeking. See Order of 10/27/06 at 7.

## VII. Conclusion

For the reasons stated above, I recommend that the First Motion for Default Judgment (Doc. #12) and the Second Motion for Default Judgment (Doc. #18) be granted to the extent that they seek to have the Clerk enter default judgment against Nicassio pursuant to Fed. R. Civ. P. 55(b)(1) in the amount of $239,160.00 with prejudgment interest at the rate of twelve percent per annum from August 12, 2005,[7] plus costs of $250.00. To the extent that the Motions seek any different relief, including the award of costs in an amount greater than $250.00, I recommend that the Motions be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

DAVID L. MARTIN
United States Magistrate Judge
January 5, 2007

[7] As of January 5, 2007, interest in the amount of $40,179.93 has accrued on the judgment amount, and it continues to accrue at the per diem rate of $78.63 ($239,160.00 judgment amount x 12% rate of interest = $28,699.20 interest per year ÷ 365 days = $78.63). From August 12, 2005, to January 5, 2007, is a period of 511 days. Thus, the amount of prejudgment interest that has accrued as of January 5, 2007, is $40,179.93 (511 days x $78.63 per diem = $40,179.93).